J-S24009-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| RONALD FAHEEM MCDANIELS | : | |
| | : | |
| Appellant | : | No. 2369 EDA 2021 |

Appeal from the Judgment of Sentence Entered June 4, 2020
In the Court of Common Pleas of Montgomery County Criminal Division
at No(s):  CP-46-CR-0000062-2019

BEFORE:   PANELLA, P.J., LAZARUS, J., and PELLEGRINI, J.[*]

MEMORANDUM BY PANELLA, P.J.:                **FILED NOVEMBER 7, 2022**

Ronald Faheem McDaniels appeals, *nunc pro tunc*, from the judgment of sentence imposed following his convictions for one count each of possession of a firearm with an altered manufacturer's number, receiving stolen property, and possession with intent to deliver cocaine ("PWID"), and three counts of criminal conspiracy.[1] On appeal, McDaniels challenges the sufficiency and weight of the evidence supporting his convictions and raises a discretionary aspects of sentencing claim. Following careful review, we affirm.

In October 2018, Pottstown Police officers used two confidential informants to conduct four controlled drug buys from a home located on

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] **See** 18 Pa.C.S.A. §§ 6110.2(a), 3925(a), 903; 35 P.S. § 780-113(a)(30).

Lincoln Avenue in Pottstown, Montgomery County, Pennsylvania. *See* N.T. (Jury Trial), 3/3/20, at 88-90. The confidential informants contacted either Jean Gross or McDaniels's brother, Jamar, to arrange the sales. *See id.* at 90, 98, 100. The confidential informants were searched before and after the buys and were provided with recorded cash to complete the transaction. *See id.* at 92-94, 96. Each controlled buy produced crack cocaine. *See id.* at 94, 99-102.

Based on information gleaned from their investigation and the series of controlled buys, police obtained a search warrant for the house. A Montgomery County SWAT team executed the nighttime search warrant on November 2, 2018. *See id.* at 25-26. The SWAT team located four individuals in the house—McDaniels, Jamar, another man named Kysim Gardner, and McDaniels's minor son. *See id.* at 28. Glen Michael Shirey, Jr., the SWAT tactical team leader, identified McDaniels as one of those individuals during trial. *See id.* at 28-29.

After the residence was cleared, Sergeant Edward Kropp, Jr. ("Sgt. Kropp"), and other officers began the search. In the kitchen, police recovered a small bag containing 0.33 grams of crack cocaine; a gun case; a gun holster; empty vials; a bottle containing caffeine supplements; a bag containing packaging materials (Ziploc bags, empty yellow vials, and clear capsules); a bottle of mannitol; and a black vest, one pocket of which contained cash and a key. *See id.* at 39-51. The second pocket of the vest contained a cigarette box, which held an identification card, an Access card, and an insurance card

for Jamar,[2] as well as vials containing 0.88 grams of cocaine and N-Ethylpentylone. *See id.* at 53.

In the dining room, police recovered two Ziploc bags, one of which had white residue; a black bag containing a gold watch, clear capsules, and empty yellow vials; plastic containers holding cocaine and N-Ethylpentylone; and a silver box containing several plastic bags and one vial of cocaine. *See id.* at 56-62. Additionally, police found two digital scales, both of which tested positive for cocaine residue, and two gun cases. *See id.* at 62, 111. Cash, empty vials, multiple vials containing cocaine, plastic containers with 20.05 grams of cocaine and N-Ethylpentylone, a razor blade, and a straw were discovered inside one of the gun cases. *See id.* at 63-65. The second gun case contained a loaded magazine. *See id.* at 65-66.

From the living room, police recovered two cell phones; a black mask; a blue bag containing a Zoraki pistol with an extended magazine; cigarette packs holding a razor, packaging materials, and a Sprint receipt for the phone number (XXX) XXX-1135; and a loaded .40 caliber Ruger pistol with a scratched serial number. *See id.* at 71-81.

---

[2] McDaniels was tried jointly with co-defendant Jamar. Jamar was convicted of one count each of PWID, possession of a firearm with an altered manufacturer's number, and criminal use of a communication facility, and three counts of conspiracy. The trial court sentenced Jamar to 10 to 20 years in prison. In Jamar's direct appeal, this Court affirmed Jamar's judgment of sentence. *See Commonwealth v. McDaniels*, 258 A.3d 543 (Pa. Super. filed June 22, 2021) (unpublished memorandum).

Pottstown Borough Police Officer Brett Cortis ("Officer Cortis") was involved with the search of the second floor of the house. In the south bedroom, police recovered approximately $2,400.00 in cash and identification and debit cards for Jamar, hidden in a sock; a plastic bag containing 14.32 grams of cocaine; a duffel bag holding two cell phones, mail addressed to Jamar at the Lincoln Avenue address, and a box of 0.40 caliber ammunition; and paperwork indicating Gardner had borrowed $1,600.00 from McDaniels. *See id.* at 179-88.

In the north bedroom, police found two loaded handguns (a Taurus .40 caliber and a Glock 27),[3] two rounds of 0.40 caliber ammunition, 2.93 grams of marijuana, and yellow vials, all sitting on top of an ottoman. *See id.* at 189-96. From inside the ottoman, police recovered a cigar box containing a sales ledger, clear glassine bags, a razor, a straw, a yellow container with cocaine, two clear bags filled with 117.84 grams of cocaine, and various documents. *See id.* at 197-98, 200-01. Significantly, the documents included a billing statement from the Social Security Administration addressed to McDaniels at the Lincoln Avenue address and McDaniels's birth certificate. *See id.* at 198-99. Police also recovered $4,667.00 in cash from a sock stuffed into the pocket of a pair of jeans found on the floor, and $20.00 matching the pre-recorded money from the controlled buy. *See id.* at 202-04. In the second

---

[3] During trial, the parties stipulated that the Glock 27 had been reported stolen by its owner on October 29, 2018. *See* N.T. (Jury Trial), 3/5/20, at 77.

pocket of the jeans, police recovered $667.00 in cash. ***See id.*** at 204. Further, in a nightstand, police found a cell phone, McDaniel's state-issued identification card identifying his home address as the location being searched, boxes of 9-millimeter ammunition, a ledger for narcotics sales, and a pipe used for smoking marijuana. ***See id.*** at 204-07. Two additional boxes of ammunition were found in the room, one containing .40 caliber rounds and a second box with an assortment of ammunition. ***See id.*** at 208. In the closet of the north bedroom, police found small, clear plastic bags; glassine bags commonly used in narcotics packaging; paperwork including traffic citations for McDaniels and a utility bill, each identifying the Lincoln Avenue address; a safe; a 9-millimeter magazine; and a Smith & Wesson 9-millimeter handgun under the bed. ***See id.*** at 209-15.

Following a jury trial, McDaniels was convicted of the above-mentioned offenses. The trial court deferred sentencing for preparation of a pre-sentence investigation report ("PSI"). On June 4, 2020, the trial court sentenced McDaniels to 5 to 10 years in prison, with credit for time served, for his PWID conviction; a consecutive prison term of three to six years for his conviction for possession of a firearm with an altered manufacturer's number; and a consecutive term of one to two years in prison for his criminal conspiracy for criminal use of a communications facility conviction. For the remaining convictions, the trial court entered a determination of guilty without further

penalty. McDaniels filed a notice of appeal on July 16, 2020, and this Court quashed the appeal as untimely filed. *See* Order, 4/21/21.

McDaniels subsequently filed a petition for relief pursuant to the Post Conviction Relief Act ("PCRA"), seeking reinstatement of his rights to file a post-sentence motion and direct appeal. The PCRA court granted the petition. McDaniels filed a post-sentence motion challenging the weight of the evidence and the discretionary aspects of his sentence. The trial court denied McDaniels's post-sentence motion, and this *nunc pro tunc* appeal followed.

McDaniels raises three challenges to the sufficiency of the evidence presented at trial. We review challenges to the sufficiency of the evidence with great deference to the credibility determinations of the fact finder:

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the finder of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

- 6 -

*Commonwealth v. Gause*, 164 A.3d 532, 540-41 (Pa. Super. 2017) (*en banc*) (citation omitted).

In his first claim, McDaniels asserts there was insufficient evidence supporting his conviction of criminal conspiracy – PWID. *See* Appellant's Brief at 17. McDaniels concedes the evidence was sufficient to establish PWID under a theory of constructive possession, based on "testimony that more than 100 grams of cocaine was discovered in a bedroom that also contained his personal effects … in light of other evidence that packaging materials, a drug sale ledger, and more than $5,000 was also found among his personal possessions." *Id.* at 20. He argues, however, that the Commonwealth failed to establish that he conspired with Jamar or Gross to sell drugs. *See id.* at 20-21. McDaniels claims the evidence indicates the confidential informants arranged to purchase cocaine by contacting only Jamar or Gross. *See id.* at 21. Further, McDaniels points out that "when Jamar [] sent [McDaniels] a text message asking [McDaniels] to call him to arrange a drug sale, [McDaniels] did not respond to the text message." *Id.* at 22 (citation to record omitted).

To define the crime of conspiracy to commit PWID, we must first define the crime of PWID. The Controlled Substance, Drug, Device and Cosmetic Act prohibits, *inter alia*, "possession with intent to manufacture or deliver[] a controlled substance by a person not registered under this act…." 35 P.S. § 780-113(a)(30). "[P]ossession with intent to deliver can be inferred from the quantity of the drugs possessed along with the other surrounding circumstances." *Commonwealth v. Little*, 879 A.2d 293, 297 (Pa. Super.

2005) (citation omitted). In the absence of direct evidence of possession (*i.e.*, finding a controlled substance on the defendant's person), the Commonwealth may establish constructive possession, which "requires proof of the ability to exercise conscious dominion over the substance, the power to control the contraband, and the intent to exercise such control." ***Commonwealth v. Perez***, 931 A.2d 703, 708 (Pa. Super. 2007).

Therefore, to prove the crime of conspiracy to commit PWID, the Commonwealth was required to prove that McDaniels had an agreement with either Jamar or Gross to commit the crime of PWID and that one of the conspirators acted to further the commission of PWID:

> **(a) Definition of conspiracy.--**A person is guilty of conspiracy with another person or persons to commit a crime if with the intent of promoting or facilitating its commission he:
>
> > (1) agrees with such other person or persons that they or one or more of them will engage in conduct which constitutes such crime or an attempt or solicitation to commit such crime; or
> >
> > (2) agrees to aid such other person or persons in the planning or commission of such crime or of an attempt or solicitation to commit such crime.
>
> * * *
>
> **(e) Overt act.--**No person may be convicted of conspiracy to commit a crime unless an overt act in pursuance of such conspiracy is alleged and proved to have been done by him or by a person with whom he conspired.

18 Pa.C.S.A. § 903. "Simplified, this requires proof of three elements: 1) an agreement, 2) shared criminal intent, and 3) an overt act." ***Commonwealth***

***v. Johnson***, 180 A.3d 474, 479 (Pa. Super. 2018). A defendant may be liable for overt acts committed by any of the co-conspirators so long as the evidence establishes the defendant intentionally entered a conspiratorial agreement. ***See Commonwealth v. Rosario***, 248 A.3d 599, 611 (Pa. Super. 2021). Further,

> [d]irect evidence of the defendant's criminal intent or the conspiratorial agreement, however, is rarely available. Consequently, the defendant's intent as well as the agreement is almost always proven through circumstantial evidence, such as by the relations, conduct or circumstances of the parties or overt acts on the part of the con-conspirators. Once the trier of fact finds that there was an agreement and the defendant intentionally entered into the agreement, the defendant may be liable for the overt acts committed in furtherance of the conspiracy regardless of which co-conspirator committed the act.

***Id.*** (citation omitted); ***see also Perez***, 931 A.2d at 708 (circumstances establishing conspiracy may include "association between alleged conspirators, knowledge of the commission of the crime, presence at the scene of the crime, and/or participation in the object of the conspiracy").

Here, Officer Cortis testified that on October 17, 2018, he observed McDaniels standing outside the residence with Jamar and Gross before the confidential informant arrived by vehicle. ***See*** N.T. (Jury Trial), 3/3/20, at 175-76. The confidential informant met with Jamar outside then accompanied him inside the house. ***See id.*** at 176. The pair came back outside, and Jamar stood with McDaniels and Gross after the informant drove away. ***See id.***

Officer Cortis also testified that he applied for and obtained search warrants for numerous cell phones that were found at the Lincoln Avenue

address. *See* N.T. (Jury Trial), 3/5/20, at 27. The iPhone found in the living room, with the phone number (XXX) XXX-1135 was identified as Jamar's, due to the confidential informant using that number to communicate with Jamar prior to the controlled buys. *See id.* at 32-33. Messages received on Jamar's phone from the phone number associated with Gross relate to arranging drug sales, and some reference "R." *See, e.g.*, *id.* at 47 ("Let R know that Alfred is coming by for a spot till tomorrow."), 48 ("Yo, answer the phone or call me back. R's phone is off. I need somebody. I've got somebody coming by for 60."). Jamar's phone also revealed messages to the phone number McDaniels identified as his own on the vital statistics form he had submitted to the court. *See id.* at 51 ("Yo, bro, call me. A white old lady about to pull up for 2 H."). A text message from Jamar to an apparent client stated, "Not at the house right now, but you can see my brother." *Id.* at 43.

Additionally, Robert Larkin, the owner of the Lincoln Avenue property, identified McDaniels as one of the tenants. *See id.* at 12-13. Larkin testified that McDaniels, Gross, and Gross's mother had signed a lease for the property in 2017. *See id.* at 13. According to Larkin, Gross asked to rent an apartment in another one of his properties in late October 2018. *See id.* at 15-16.

Moreover, drugs, packaging materials, and firearms were found throughout several common areas in the house. *See generally* N.T. (Jury Trial), 3/3/20, at 39-81. Officer Cortis also testified that a pre-recorded $20 bill that had been used during the controlled buys was found amongst the

significant amount of cash discovered in a pair of jeans on the floor of McDaniels's bedroom. **See id.** at 202-04.

The above evidence, viewed in the light most favorable to the Commonwealth as the verdict winner, was sufficient to sustain McDaniels's conviction for criminal conspiracy – PWID. The evidence reflects that Gross sent customers to the Lincoln Avenue address, where McDaniels lived (and where Gross had previously lived with him), to purchase drugs. Messages between Gross and Jamar, and between Jamar and McDaniels, also implicate McDaniels's involvement. Further, as the trial court noted, the presence of $20.00 of pre-recorded money from a controlled buy, "which was arranged by Jean Gross, showed that [McDaniels] and his co[-]conspirators shared proceeds from each other's drug sales as part of their ongoing conspiracy." Trial Court Opinion, 1/6/11, at 15. Even in absence of direct evidence of McDaniels's participation in the controlled buys, evidence of McDaniels's shared criminal intent while his co-conspirators committed the overt acts sufficiently establishes his intentional entry into the agreement. **See Rosario**, 248 A.3d at 611. Accordingly, McDaniels is not entitled to relief on this claim.

In his second claim, McDaniels contends the evidence presented at trial was insufficient to sustain his convictions for possession of a firearm with an altered manufacturer's number and criminal conspiracy to commit same. **See** Appellant's Brief at 27. McDaniels asserts the Commonwealth failed to establish his constructive possession of the firearm with an altered manufacturer's number, a Ruger pistol, "which was secreted away in a drawer

in an end table in the living room." **_Id._** at 29. According to McDaniels, there was no evidence specifically tying him to the weapon. **_See id._** Alternatively, McDaniels argues he lacked the requisite _mens rea_ to support these convictions. **_See id._** at 30. In particular, he claims the evidence does not support a finding that McDaniels had actual knowledge that the serial number had been obscured. **_See id._** at 32-33.[4]

The Uniform Firearms Act provides that "[n]o person shall possess a firearm which has had the manufacturer's number integral to the frame or receiver altered, changed, removed or obliterated." **_See_** 18 Pa.C.S.A. § 6110.2(a). The Commonwealth must establish "that a defendant acted intentionally, knowingly, or recklessly with respect to the obliterated manufacturer's number on the firearm." **_Commonwealth v. Jones_**, 172 A.3d 1139, 1145 (Pa. Super. 2017).

Further, the Commonwealth may establish possession under a theory of constructive possession. **_See Commonwealth v. Smith_**, 146 A.3d 257, 263 (Pa. Super. 2016).

> Constructive possession is an inference arising from a set of facts that possession of the contraband was more likely than not. Constructive possession may be proven by circumstantial evidence and the requisite knowledge and intent may be inferred from examination of the totality of the circumstances. Moreover, we review circumstantial evidence under the same standard as

---

[4] McDaniels does not separately address his conviction for criminal conspiracy to possess a firearm with an altered manufacturer's number. Rather, he relies on the arguments made in support of his first claim challenging his conviction for conspiracy to commit PWID.

direct evidence, *i.e.*, that a decision by the trial court will be affirmed so long as the combination of evidence links the accused to the crime beyond a reasonable doubt.

*Id.* (internal citations, quotation marks, and paragraph break omitted).

We conclude the evidence presented at trial, viewed in the light most favorable to the Commonwealth as the verdict winner, was sufficient to establish McDaniels had knowledge of the firearm's existence and location in the house[5] and the intention to possess it. Sgt. Kropp testified at trial that the Ruger pistol with an altered manufacturer's number was discovered inside an end table in the living room. *See* N.T. (Jury Trial), 3/3/20, at 79. Sgt. Kropp testified the serial number had been "scratched up." *Id.* at 80; *see also* Exhibits C-57, C-58, C-59, C-60, C-61, C-98 (depicting the Ruger and the scratching on the serial number). The Commonwealth also introduced into evidence photographs recovered from Jamar's cell phone, one of which showed McDaniels standing in the living room of the house, holding a handgun in his hand, and carrying another firearm in his belt. *See* N.T. (Jury Trial), 3/5/20, at 51-55; *see also* Exhibit C-208. Therefore, the circumstantial evidence was sufficient to establish McDaniels constructively possessed the firearm with an altered manufacturer's number. *See Smith*, 146 A.3d at 263 (concluding the Commonwealth presented sufficient evidence to establish the

---

[5] Significantly, McDaniels does not contest that he resided at the Lincoln Avenue address. In fact, McDaniels signed a vital statistics form, which was submitted to the court, which confirmed his address. *See* N.T. (Jury Trial), 3/3/20, at 108.

appellant's constructive possession of a firearm with an altered manufacturer's number, where other items recovered in the same area belonged to the appellant and identified his address as the one searched, and the appellant had fled to the room where the firearm had been recovered). Accordingly, this claim is without merit.

Next, McDaniels asserts there was insufficient evidence supporting his conviction for criminal conspiracy – criminal use of a communication facility. *See* Appellant's Brief at 34. McDaniels claims the evidence showed that Jamar and Gross communicated regularly to arrange drug sales from the Lincoln Avenue address. *See id.* at 35. However, McDaniels avers, the analysis of his cell phone revealed only one incoming text from Jamar referencing drug sales, and there was no evidence that McDaniels responded to the message. *See id.* at 35-36.

We disagree with McDaniels's legal conclusions as well as his description of the record. First, we conclude that the single text, by itself, would be sufficient to allow a fact-finder to infer McDaniels used his phone to facilitate the conspiracy to sell narcotics. Further, we note that this text message is not the only evidence capable of supporting a finding that McDaniels utilized his phone in furtherance of the conspiracy. Gross sent a text message to Jamar expressing her frustration that McDaniels was not answering her calls because she needed someone to meet customers at the house. This evidence would permit a fact-finder to infer that the conspirators coordinate their efforts

through phone calls to each other. Given these conclusions, McDaniels's third claim merits no relief.

In his fourth claim, McDaniels argues the verdict was against the weight of the evidence. *See* Appellant's Brief at 37. McDaniels challenges the credibility of Officer Cortis's testimony. *See id.* at 39-40. In particular, McDaniels asserts that

> [i]t simply defies logic and strains common sense to believe that [McDaniels], a supposedly sophisticated drug dealer accused of trafficking significant quantities of cocaine, would keep his birth certificate and state-issued identification card next to his drugs and trafficking supplies, especially where this testimony appeared tailored to remedy a weakness in the Commonwealth's case by establishing [McDaniels's] ownership of the drugs.

*Id.* at 40.[6]

A weight of the evidence claim is addressed to the discretion of the trial court:

> The weight of the evidence is a matter exclusively for the finder of fact, who is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses. A new trial is not warranted because of a mere conflict in the testimony and must have a stronger foundation than a reassessment of the credibility of witnesses. Rather, the role of the trial judge is to determine that notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice. On appeal, our purview is extremely limited and is confined to whether the trial court abused its discretion in finding that the jury verdict did not shock one's conscience. Thus, appellate review of a weight claim consists of a

---

[6] We observe that McDaniels conflates the distinct concepts of weight and sufficiency of the evidence in parts of his argument by relying on his prior argument challenging the sufficiency of the evidence supporting his conspiracy to commit PWID conviction.

review of the trial court's exercise of discretion, not a review of the underlying question of whether the verdict is against the weight of the evidence. An appellate court may not reverse a verdict unless it is so contrary to the evidence as to shock one's sense of justice.

*Commonwealth v. Diaz*, 152 A.3d 1040, 1046 (Pa. Super. 2016) (citation and internal quotation marks omitted). "One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence…." *Commonwealth v. Clay*, 64 A.3d 1049, 1055 (Pa. 2013) (citation omitted).

McDaniels fails to specify which conviction or convictions he believes is against the weight of the evidence. However, as the trial court noted, McDaniels's argument for this issue suggests a challenge to his PWID conviction. The trial court concluded McDaniels's PWID conviction is not against the weight of the evidence considering the large quantity of cocaine recovered from his bedroom along with his birth certificate and state identification, firearms, cash, drug sales ledgers, and cutting and packaging materials. *See* Trial Court Opinion, 1/6/22, at 18. The trial court also noted that drugs and related paraphernalia were discovered throughout the other rooms of the house. *See id.* While we agree that it is surprising that McDaniels's birth certificate was found with narcotics, this does not necessitate a conclusion that this evidence shocks the judicial conscience. To the contrary, people, and especially criminals, often make decisions that look objectively ludicrous with the benefit of hindsight.

- 16 -

Upon review, we conclude the evidence adequately supports the trial court's determination, and we discern no manifest abuse of discretion by the trial court in reaching this conclusion. *See Diaz*, 152 A.3d at 1046. We cannot state that the trial court abused its discretion in concluding the verdict did not shock its conscience. *See id.* Therefore, McDaniels is not entitled to relief on this claim.

Finally, McDaniels claims the trial court relied too heavily on the severity of the offense and imposed a manifestly excessive aggregate sentence without proper consideration of certain mitigating factors. *See* Appellant's Brief at 42. "A challenge to the discretionary aspects of a sentence must be considered a petition for permission to appeal, as the right to pursue such a claim is not absolute." *Commonwealth v. McAfee*, 849 A.2d 270, 274 (Pa. Super. 2004) (citation omitted). Rather, an appellant must invoke this Court's jurisdiction. *See Commonwealth v. Moury*, 992 A.2d 162, 170 (Pa. Super. 2010) (citation omitted).

> [W]e conduct a four-part analysis to determine: (1) whether the appellant has filed a timely notice of appeal, *see* Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, *see* Pa.R.Crim.P. [720]; (3) whether the appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.A. § 9781(b).
>
> * * *
>
> The determination of what constitutes a substantial question must be evaluated on a case-by-case basis. A substantial question exists only when the appellant advances a colorable argument

- 17 -

that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process.

***Moury***, 992 A.2d at 170 (quotation marks and some citations omitted).

Here, McDaniels preserved his claim in a *nunc pro tunc* post-sentence motion and filed a *nunc pro tunc* notice of appeal. McDaniels also included a separate Rule 2119(f) statement in his appellate brief, asserting the trial court imposed an unduly harsh sentence based exclusively on the seriousness of the crime, without consideration of relevant mitigating factors. ***See*** Appellant's Brief at 41-42. We conclude McDaniels raised a substantial question for our review, and we proceed to the merits of his sentencing challenge. ***See Commonwealth v. Caldwell***, 117 A.3d 763, 770 (Pa. Super. 2015) (*en banc*) (explaining that "an excessive sentence claim—in conjunction with an assertion that the court failed to consider mitigating factors—raises a substantial question." (citation and quotation marks omitted)).

We review discretionary sentencing challenges with great deference to the sentencing court:

> Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

***Commonwealth v. Bullock***, 170 A.3d 1109, 1123 (Pa. Super. 2017) (citations and quotation marks omitted).

- 18 -

"In every case in which the court imposes a sentence for a felony … the court shall make as a part of the record, and disclose in open court at the time of sentencing, a statement of the reason or reasons for the sentence imposed." 42 Pa.C.S.A. § 9721(b); *see also Commonwealth v. Mouzon*, 812 A.2d 617, 620-21 (Pa. 2002) (plurality). "In considering these factors, the court should refer to the defendant's prior criminal record, age, personal characteristics and potential for rehabilitation." *Commonwealth v. Antidormi*, 84 A.3d 736, 761 (Pa. Super. 2014) (citation omitted). The trial court must also consider the sentencing guidelines. *See* 42 Pa.C.S.A. § 9721(b); *see also Commonwealth v. Sheller*, 961 A.2d 187, 190 (Pa. Super. 2008) (stating that "[w]hen imposing a sentence, the [trial] court is required to consider the sentence ranges set forth in the Sentencing Guidelines…."). Moreover, where, as here, the trial court has the benefit of a PSI, "we can assume the sentencing court was aware of relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors." *Moury*, 992 A.2d at 171 (internal quotation marks and citation omitted).

McDaniels argues that his aggregate sentence of nine to eighteen years of imprisonment is excessive when compared to 48- to 66-month standard range sentence suggested by the guidelines for his most serious conviction. *See* Appellant's Brief at 42. He contends the court "relied solely on the

seriousness of appellant's crime while ignoring substantial evidence that would have supported the imposition of a mitigated sentence." ***See id.*** at 43.

Initially, each of the sentences imposed are within the standard range of the sentencing guidelines based upon McDaniels's prior record score of two and the applicable offense gravity scores. ***See*** 204 Pa. Code § 303.16(a). Therefore, we may only vacate McDaniels's sentence if "the case involves circumstances where the application of the guidelines would be clearly unreasonable." 42 Pa.C.S.A. § 9781(c)(2); ***see also Moury***, 992 A.2d at 171.

During the sentencing hearing, McDaniels's counsel argued that McDaniels's criminal history was relatively minimal, with only one prior offense. ***See*** N.T. (Sentencing), 6/4/20, at 7. Counsel also explained that McDaniels had a difficult childhood and a "rough upbringing." ***See id.*** at 8.

The trial court, prior to imposing the sentence, explained that it had fully considered the PSI and the sentencing guidelines. ***See id.*** at 4, 14. The court highlighted the significant amount of cocaine (approximately 186 grams in total) recovered from the Lincoln Avenue address, as well as the number of firearms, one of which had an altered manufacturer's number. ***See id.*** at 15. Further, the trial court acknowledged the mitigating factors raised by McDaniels's counsel. ***See id.*** The record therefore reflects that the trial court was aware of all relevant sentencing factors, and we cannot conclude that McDaniels has establish his standard-range sentence was unreasonable under these circumstances.

Based upon the foregoing, we affirm McDaniels's judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/7/2022